COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia

DONALD ARTHUR HERRINGTON

MEMORANDUM OPINION[*] BY
v.      Record No. 1083-13-4      JUDGE TERESA M. CHAFIN
NOVEMBER 12, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

James J. Ilijevich for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Donald Arthur Herrington ("appellant") was convicted in a jury trial of possession with

intent to distribute or sell a Schedule I or II controlled substance in violation of Code § 18.2-248

and was sentenced to a term in prison of 15 years. On appeal, he challenges (1) the trial court's

denial of his motion to quash the amended indictment which had been certified by the general

district court as a different offense; (2) the trial court's denial of appellant's motion to waive

counsel and to represent himself at his trial; (3) the trial court's denial of appellant's motion to

dismiss the indictment as it was tried after the speedy trial time limit set forth in Code

§ 19.2-243; (4) the trial court's granting of the Commonwealth's motion to continue on February

20, 2013 when the Commonwealth did not show good cause for the continuance; (5) the trial

court's failure to order a mistrial following multiple inappropriate and prejudicial comments

about appellant by the Commonwealth, resulting in appellant's right to a fair trial being

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

prejudiced; and (6) the trial court's failure to strike the Commonwealth's evidence, and the jury's error in finding appellant guilty of possession of a Schedule I/II substance, with intent to distribute, when there was no credible evidence that appellant arranged a drug transaction and that the narcotic pills, oxycodone, found on his person were not lawfully his pills, obtained through a valid prescription.

## I. Background

On May 25, 2012, Deputy Kurt McBride of the Stafford County Sheriff's Department was working with an informant to arrange an undercover purchase of drugs. Using the informant's cell phone, and posing as the informant, McBride exchanged text messages sent to a person known as "Don" on another cell phone (the second phone). McBride asked "Don" to "hit [him] up" when he was nearby the next day, and asked what "number I can look forward to." McBride received a response that he would get "at least thirty."

On May 26, 2012, the informant's phone received text messages from the second phone that he had gotten "30s instead." A text advised McBride that they were leaving a "store in Woodbridge" and that "they r v." McBride responded by text asking what type of car he would be driving. The second phone called the informant's phone, and McBride observed the informant having a conversation. They agreed to meet at a McDonald's restaurant.

A series of text messages were exchanged regarding the meeting. Finally, the second phone sent a text message "I am here." The police observed appellant in the passenger seat of a green sedan that Andrea Flood was driving. The police confronted appellant and Flood. The second phone, which appellant admitted was his, was on the center console of the vehicle. The police observed two bulges near appellant's waistband. One bulge was appellant's wallet, which contained $496 in cash. The wallet also contained twenty blue oxycodone pills and six orange

- 2 -

pills packaged in cellophane. The other bulge was an unmarked prescription drug bottle containing 109 blue oxycodone pills and five unidentified orange pills.

Earlier in the day on May 26, 2012, appellant traveled with Kim Burgess and Flood to Dr. Gupreet Bajwa's office, where Burgess obtained a prescription for 180 pills of oxycodone. They traveled to a pharmacy in Lorton, where Burgess filled the prescription.

An expert witness who examined the blue pills found on appellant indicated that they were thirty milligram tablets. They were also marked with a "V," which is indicative of a greater street value.

Appellant produced evidence that on May 7, 2012, Bajwa wrote a prescription for appellant for 180 oxycodone pills. Appellant testified that Flood, who was his girlfriend on the date of his arrest, abused pain medication. Appellant claimed that both Flood and Burgess were using his phone on May 26, 2012. He said he thought he was going to be meeting an individual to get Dilaudid pills for Flood and to repay that person a portion of a debt owed by Flood. Appellant said he did not send all the text messages that the Commonwealth had introduced into evidence. He said that he had the bottle of pills with him because the safe at his home had been broken, and he worried that one of the people living with him might take the medication when he was not home. Appellant said he made money by buying and selling various types of merchandise, but was not dealing drugs. Appellant admitted having prior felony convictions.

II. Effect of the Preliminary Hearing on the Subsequent Indictment

On appeal, appellant argues that it would have been lawful for the Commonwealth to seek both an indictment for possessing a controlled substance and a direct indictment for possessing a controlled substance with the intent to distribute. He contends, however, that because he was arrested upon a warrant charging under Code § 18.2-248 and the district court certified a charge under Code § 18.2-250, the Commonwealth could not then seek an indictment

for a violation of Code § 18.2-248. We disagree and for the reasons that follow affirm the trial court's decision to deny appellant's motion to quash.

Generally, the decision to grant a motion to quash an indictment "rests in the sound discretion of the [trial] court." Commonwealth v. M'Caul, 3 Va. (1 Va. Cas.) 271, 301 (1812). However, because this issue requires us to interpret the principles governing preliminary hearings and the limitations they may impose on subsequent proceedings, it is a question of law which this Court is required to review *de novo*. See Williams v. Commonwealth, 53 Va. App. 50, 55, 669 S.E.2d 354, 356 (2008).

Appellant was initially charged by warrant with possession of a Schedule I or II controlled substance with the intent to manufacture, sell, give, or distribute, in violation of Code § 18.2-248. The general district court held a preliminary hearing on August 28, 2012. Finding no probable cause to support the possession with intent to distribute charge pursuant to Code § 18.2-248, the general district court amended the warrant to felonious possession of a Schedule I or II controlled substance in violation of Code § 18.2-250 and certified the felonious possession charge to the grand jury. Subsequently, however, the Commonwealth presented an indictment for the original charge under Code § 18.2-248 to the grand jury, which indicted appellant on that charge.

Appellant made a motion to quash or amend the indictment, contending that the grand jury had wrongly returned an indictment on an offense that had not been certified. The trial court held that, absent the district court's entry of final judgment on a lesser-included offense, the Commonwealth "was within its rights to offer" the indictment reinstating the intent element under Code § 18.2-248.

The principles governing the holding of a preliminary hearing and any limitations it might impose on a subsequent indictment are well settled.

- 4 -

> It is well-established that when the Commonwealth seeks to prosecute an adult for a felony, it has several options how to proceed, including direct indictment, presentment, information, or arrest warrant followed by a preliminary hearing in the general district court. The preliminary hearing which attends prosecution of an arrest warrant is essentially a screening process . . . [to ascertain] whether there is reasonable ground to believe that the crime has been committed and . . . the accused is the person who committed it. Similarly, direct indictment by grand jury results from a finding of "just or probable cause" that the accused committed a specified criminal offense. Although neither a preliminary hearing nor an indictment is jurisdictional and constitutionally imposed, it is reversible error to deny such statutory rights whenever asserted by an accused.

Armel v. Commonwealth, 28 Va. App. 407, 409, 505 S.E.2d 378, 379 (1998) (alterations in original, citations and some internal quotations omitted).

A ruling in a preliminary hearing normally does not preclude the Commonwealth from obtaining a subsequent indictment. A later indictment constitutes a "new" charge, wholly "distinct from the original charge." Id. at 410, 505 S.E.2d at 380. Such a case involves "two separate prosecutions arising from the same criminal conduct," Wright v. Commonwealth, 52 Va. App. 690, 701, 667 S.E.2d 787, 792 (2008), with the first being considered an "entirely different proceeding" from the second, Duggins v. Commonwealth, 59 Va. App. 785, 793, 722 S.E.2d 663, 667 (2012). However, if a district court convicts the defendant on a warrant alleging a misdemeanor, its ruling amounts to a final judgment, which, consistent with principles of double jeopardy, prohibits the Commonwealth from thereafter prosecuting the defendant on some greater offense. See Moore v. Commonwealth, 218 Va. 388, 391, 237 S.E.2d 187, 190 (1977) (the district court "is not required to proceed immediately to try the accused on the merits of such lesser offense, although the court may elect to do so"); see also Greenwalt v. Commonwealth, 224 Va. 498, 501, 297 S.E.2d 709, 711 (1982) (because the district court hearing was on warrant alleging misdemeanor, "the only options open to the court were a finding

of guilty or not guilty" and its ruling precluded subsequent indictment and prosecution in circuit court).

The Commonwealth may move to *nolle prosequi* a pending charge in district court before seeking a direct indictment. Under settled principles, a *nolle prosequi* terminates a criminal prosecution and leaves the situation "the same as if the Commonwealth had chosen to make no charge" at all. Wright, 52 Va. App. at 700-01, 667 S.E.2d at 792 (citation and internal quotation marks omitted). Once a *nolle prosequi* has been entered, "the slate is wiped clean," as if the charges "*had never existed.*" Kenyon v. Commonwealth, 37 Va. App. 668, 675, 561 S.E.2d 17, 20 (2002) (emphasis in original and citations omitted). See Wright, 52 Va. App. at 699-707, 667 S.E.2d at 791-95 (where the district court granted Commonwealth's motion to *nolle prosequi* charge of felony assault of one state trooper, Commonwealth properly obtained direct indictments for same offense as well as felony assault of second trooper); Painter v. Commonwealth, 47 Va. App. 225, 230-35, 623 S.E.2d 408, 410-13 (2005) (where defendant was convicted in district court of petit larceny on original charge of felony third offense larceny, her appeal to circuit court for trial *de novo* meant that petit larceny conviction no longer existed; thus, Commonwealth could *nolle prosequi* misdemeanor charge in circuit court and indict and prosecute defendant on original felony third offense larceny charge).

In the present case, however, the Commonwealth contends that a *nolle prosequi* is not necessary before bringing a direct indictment. The Commonwealth relies in part on this Court's holding in Seibert v. Commonwealth, 22 Va. App. 40, 467 S.E.2d 838 (1996). In Seibert, the defendant was arrested on three warrants, the charges within which were certified to the grand jury. The Commonwealth sought direct indictments that more specifically reflected defendant's conduct rather than indictments based on the certified charges. Id. at 42, 467 S.E.2d at 839. The jury in the trial court entered convictions on thirty-two assorted counts that included producing

sexually explicit material, aggravated sexual battery, and indecent liberties. On appeal, the defendant asserted that the Commonwealth violated his right to a preliminary hearing pursuant to Code § 19.2-218 because he was arrested before he was indicted. This Court affirmed on appeal, ruling that the defendant's right to a preliminary hearing pursuant to Code § 19.2-218 was not violated because defendant was directly indicted for charges distinct from those on which he was arrested but which arose out of the same course of conduct. Id. at 42-43, 467 S.E.2d at 839-40.

In Ashby v. Commonwealth, 33 Va. App. 540, 535 S.E.2d 182 (2000), the defendant was charged with actual and attempted carnal knowledge of a minor in violation of Code § 18.2-63. He was committed to the county jail from the time of execution of the warrants until his preliminary hearing. At the preliminary hearing, the district court amended several of the warrants so that they charged three acts of carnal knowledge and two acts of attempted carnal knowledge. The district court then certified the amended charges to the grand jury. While defendant was still in custody on the amended warrants charging violations and attempted violations of Code § 18.2-361, the grand jury issued direct indictments charging defendant with violations and attempted violations of a different statute, Code § 18.2-63. The direct indictments were based on the same acts with a child fourteen years of age and the same offense dates as charged in the amended warrants. The Commonwealth represented that it sought direct indictments under Code § 18.2-63 rather than Code § 18.2-361 as charged in the amended warrants because the former offense took into account the victim's status as a juvenile and provided for a heightened penalty as a result. Notably, "[t]he amended warrants were never formally dismissed or disposed of by *nolle prosequi*, and appellant was never released from custody on those charges or re-arrested or provided a new bond hearing on the direct

- 7 -

indictments." Id. at 543, 535 S.E.2d at 184.  Citing to Brooks v. Peyton,[1] 210 Va. 318, 322, 171

S.E.2d 243, 246 (1969), this Court held that "although no indictment was ever issued for the

offenses for which appellant was arrested and no *nolle prosequi* of the charges on which

appellant had been arrested by warrant was effected," the new indictment "supplanted" the

finding of probable cause made by the district court.  Ashby, 33 Va. App. at 546, 535 S.E.2d at

185.

Thus, under the same principle adopted in Brooks, the new indictment for possession

with intent to distribute in the present case "supplanted" the finding of probable cause made by

the district court.  Accordingly, appellant's continued incarceration and trial was based on the

possession with intent to distribute indictment rather than the indictment for the lesser offense of

simple possession.  See Seibert, 22 Va. App. at 42-43, 467 S.E.2d at 839-40.  The

Commonwealth's failure to *nolle prosequi* the charge in the district court is not dispositive.

Finding that the new indictment supplanted the old, we find no error in the trial court's denial of

appellant's motion to quash the amended indictment.

### III.  Right of Self-Representation

Appellant contends that the trial court erred in denying his motion to waive counsel and

to represent himself at trial.  Even though a trial court's ultimate ruling regarding whether to

---

[1]    In Brooks, the petitioner was first indicted on a charge of larceny. At a trial of his accomplices, a similar larceny indictment was found to be imperfect.  Thereafter, the petitioner was indicted on a charge of robbery, having never been arraigned on the first indictment.  Brooks claimed his statutory right to a speedy trial was violated.  The Court rejected his contention, noting that his motion was directed toward the first indictment, not the second. The Court noted that "[w]hen an original indictment is supplanted by a second indictment, the terms contemplated by the statute are to be counted from the time of the second indictment."  210 Va. at 322, 171 S.E.2d at 246.

Presley v. Commonwealth, 2 Va. App. 348, 350-51, 344 S.E.2d 195, 196 (1986).

permit the defendant to represent himself at trial is a question of law that we review *de novo*, see Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005), subsidiary factual findings are reviewable on appeal for clear error. Edwards v. Commonwealth, 49 Va. App. 727, 741, 644 S.E.2d 396, 402 (2007).

Appellant was charged and arrested on May 26, 2012, and an attorney was appointed to represent him. The case was set for a jury trial on January 8, 2013. However, on December 17, 2012, the trial court granted the motion of Ronald Hur, appellant's appointed attorney, to withdraw to avoid a conflict of interest. The trial court appointed Andrew Cornick to represent appellant. However, before the scheduled trial date on January 8, 2013, Cornick filed motions to withdraw and to continue the trial. At the January 8, 2013 hearing, appellant stated that he would like to represent himself. The trial court responded that it would appoint a new attorney for appellant, allow the new attorney to explain to appellant the advantages and disadvantages of self-representation, and permit appellant the opportunity subsequently to make a decision about whether to represent himself. The trial court then appointed Joseph Brown to represent appellant. Appellant objected to the matter being continued to January 24, 2013 for a status hearing regarding appellant's choice to represent himself, stating that he was prepared to go forward with trial that day.

Appellant's trial commenced on March 11, 2013. Before trial, the trial court asked if appellant wished to represent himself. Responding on appellant's behalf, Brown said that appellant did not wish to represent himself.

The Sixth Amendment guarantees a criminal defendant "the Assistance of Counsel for his defense." U.S. Const. amend. VI. This textual right "implies" the concomitant right to be unassisted by counsel. Faretta v. California, 422 U.S. 806, 821 (1975). The unique right to appear *pro se*, known as the Faretta right, applies only when a defendant "truly wants to do so."

Id. at 817.  Because a *pro se* defense "usually increases the likelihood of a trial outcome unfavorable to the defendant," McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984), courts scrutinize the good faith of the defendant's request as well as his manner of making it.  Despite its constitutional rank, however, "the right to self-representation is not absolute."  Martinez v. Court of Appeal, 528 U.S. 152, 161 (2000).

> To be successful, a Faretta request must be (i) timely, (ii) clear and unequivocal, and (iii) "voluntarily, knowingly, and intelligently made."  Thomas v. Commonwealth, 260 Va. 553, 558, 539 S.E.2d 79, 82 (2000) (footnote omitted) . . . .

Edwards, 49 Va. App. at 735, 644 S.E.2d at 400.

Appellant's assignment of error states:  "The trial court erred when it denied the defendant's motion to waive counsel and to represent himself at his trial."  We confine our consideration of appellant's argument to the specific question asserted in the assignment of error.  See Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court.").

The record reflects that the trial court, by appointing appellant a new attorney and postponing further proceedings on January 8, 2013, did not foreclose appellant from exercising his right to represent himself at trial.  As Cornick had just been permitted to withdraw, the trial court appointed Brown to represent appellant and, specifically, to advise appellant about the decision to represent himself.  Appellant had the opportunity in subsequent proceedings to assert his right to self-representation, but he chose not to do so.  Indeed, before trial began on March 11, 2013, appellant's attorney denied that appellant wished to represent himself at trial.  Thus, we do not find that the trial court refused to permit appellant to represent himself at trial.

## IV.  Speedy Trial

Appellant's speedy trial claim under Code § 19.2-243 also fails.  Appellant was arrested on May 26, 2012.  His preliminary hearing was conducted on August 28, 2012 in the district

court. Following his preliminary hearing, his amended warrant for possession of a controlled substance pursuant to Code § 18.2-250 was certified to the grand jury. However, the Commonwealth presented an indictment for the original charge under Code § 18.2-248 to the grand jury, which indicted appellant on that charge on October 1, 2012. Appellant was arraigned on November 1, 2012, and his trial was scheduled on January 8, 2013. Appellant remained continuously incarcerated from the date of his arrest. One of appellant's appointed counsel filed a motion to continue the trial due to a conflict of interest. The attorney was relieved as counsel on January 8, 2013. Also on that date, appellant moved to represent himself in order to be tried on that day as discussed above. The trial court denied appellant's motion and appointed counsel to discuss the ramifications of proceeding without counsel, and set a status date of January 24, 2013. On January 24, counsel requested a new status date due to obligations in another court. On January 28, 2013, appellant agreed to waive his speedy trial rights in order to set a new trial date.

During argument at the outset of the trial on the defendant's motion to dismiss pursuant to Code § 19.2-243, defense counsel acknowledged that the sole basis for the speedy trial claim was the circuit court's failure to proceed with the trial on January 8, 2013, and instead its continuing the case for the "sixteen-day period" to the next hearing on January 24, 2013.[2]

Code § 19.2-243 provides in relevant part as follows:

> Where a district court has found that there is probable cause
> to believe that [the accused] has committed a felony, the accused,
> if he is held continuously in custody thereafter, shall be forever
> discharged from prosecution for such offense if no trial is
> commenced in the circuit court within five months from the date
> such probable cause was found by the district court . . . .

---

[2] Appellant failed in the trial court to challenge the timeliness of his trial based on anything other than the January 8, 2013 hearing. Thus, all other arguments are procedurally defaulted and this Court will not consider them. See Rule 5A:18.

If there was no preliminary hearing in the district court, or if such preliminary hearing was waived by the accused, the commencement of the running of the five[-month period], set forth in this section, shall be from the date an indictment or presentment is found against the accused.

The Commonwealth had to try appellant, subject to any tolling under the statute, within "152 and a fraction days" of a finding of probable cause. Ballance v. Commonwealth, 21 Va. App. 1, 6, 461 S.E.2d 401, 403 (1995). See Code § 19.2-243.

> Our cases interpreting Code § 19.2-243 hold that the disposal of an indictment by *nolle prosequi* "'is a discontinuance which discharges the accused from liability on the indictment to which the *nolle prosequi* is entered.'" Arnold v. Commonwealth, 18 Va. App. 218, 221, 443 S.E.2d 183, 185 (quoting Miller v. Commonwealth, 217 Va. 929, 935, 234 S.E.2d 269, 273 (1977)), aff'd on reh'g en banc, 19 Va. App. 143, 450 S.E.2d 161 (1994). Thus, when an indictment is disposed of by *nolle prosequi*, with or without notice to the accused, before the speedy trial statute has run and the accused subsequently is re-indicted on the same charge, the speedy trial statute begins to run anew from the time of the second indictment. See, e.g., id. "A new indictment is a new charge, distinct from the original charge or indictment." Id. "'When an original indictment is supplanted by a second indictment, the terms contemplated by [Code § 19.2-243] are to be counted from the time of the second indictment.'" Presley v. Commonwealth, 2 Va. App. 348, 350, 344 S.E.2d 195, 196 (1986) (quoting Brooks v. Peyton, 210 Va. 318, 322, 171 S.E.2d 243, 246 (1969)).

Ashby, 33 Va. App. at 545-46, 535 S.E.2d at 185.

Appellant's preliminary hearing was on August 28, 2012, and he was continuously confined thereafter until trial. However, the grand jury indicted appellant on the charge of possession with the intent to distribute on October 1, 2012.

> [A]lthough no indictment was ever issued for the offenses for which appellant was arrested and no *nolle prosequi* of the charges on which appellant had been arrested by warrant was effected, the above-quoted principle espoused in Brooks nevertheless applies to the facts of this case.

- 12 -

Id. at 546, 535 S.E.2d at 185.  Thus, "the new indictment 'supplanted' the finding of probable cause made by the district court," and appellant's continued incarceration was based on the new indictment, and the statutory time period contemplated by Code § 19.2-243 began to run anew as of October 1, 2012.  Id. at 547, 535 S.E.2d at 186.

Appellant contends that even counting any delay attributable to the defense after the preliminary hearing, his March 11, 2013 trial commenced past the 153-day deadline and the trial court should have dismissed the case.  However,  because the speedy trial time period began to run anew on October 1, 2012, even if the sixteen-day delay from January 8, 2013 to January 24, 2013 is attributed to the Commonwealth, only 117 days which were not attributable to appellant elapsed between October 1, 2012 and appellant's trial on March 11, 2013.  Accordingly, we conclude that appellant's March 11, 2013 trial occurred within the time required by Code § 19.2-243.

V.  Commonwealth's Motion to Continue

Appellant argues the trial court erred in granting the Commonwealth's motion to continue the trial from February 20, 2013 to March 11, 2013.  The Supreme Court has held:

> The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case.  The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion and resulting prejudice . . . .

Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007).

The prosecutor requested the continuance on February 20, 2013 because a search warrant for appellant's cellular telephone, which contained evidence regarding the charged crime, had not been executed because the device was password protected.  The prosecutor maintained that the search could be executed by the FBI within five days.  A report could then be generated regarding the contents of the cell phone.  The prosecutor admitted that the search of the phone

- 13 -

had been delayed during the pendency of the proceedings because of the belief that the case would be resolved with a guilty plea rather than a trial. The Commonwealth had not requested any previous continuances. Appellant objected to the continuance, arguing that the Commonwealth had unduly delayed its efforts to search the phone. Appellant also claimed that he had provided the password for the device at the time of his arrest, but he no longer remembered it.

We find no basis to conclude that appellant suffered prejudice as a result of the brief continuance requested by the Commonwealth to allow it to complete its investigation in the matter. The trial court did not abuse its discretion, and we do not disturb the decision.

VI. Motions for Mistrial

Appellant contends on appeal that the trial court erred by denying his motions for mistrial at three junctures in the proceedings: (1) during the cross-examination of Dr. Gupreet Bajwa; (2) during cross-examination of Julie Tremblay; and (3) during closing arguments.

During cross-examination of Dr. Gupreet Bajwa regarding his credentials as a medical doctor, appellant objected to the relevance of the prosecutor's questions. The trial court sustained the objection. When questioned further by the trial court regarding the relevance of the line of questioning, the prosecutor responded that she intended to show that Bajwa recently had been disciplined by the Virginia Board of Medicine. The trial court sustained appellant's objection, instructed the jury to disregard the prosecutor's comment, and denied appellant's motion for a mistrial.

During cross-examination of Julie Tremblay, the prosecutor asked if she had visited appellant while he was in jail. Appellant objected, and the trial court sustained the objection. The trial court denied appellant's motion for a mistrial.

- 14 -

During closing argument, the prosecutor argued that appellant's lifestyle and personal circumstances indicated that he was a drug dealer. The trial court overruled appellant's objection to this aspect of the argument.

"Whether to grant a mistrial rests within the discretion of the trial judge[.]" Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (*en banc*).

> The trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights had been so indelibly prejudiced as to require a new trial. Unless we can say as a matter of law that this determination was wrong, it will not be disturbed on appeal. Unless the record shows the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given.

LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983).

We do not find that appellant's rights were indelibly prejudiced by the prosecutor's response to the trial court's question regarding Bajwa or the question posed to Tremblay. In both instances, the trial court sustained appellant's objection. There is no indication that the jury did not follow the trial court's instruction to disregard the prosecutor's comment or its instruction at the beginning of trial to disregard anything to which the court sustained an objection. Moreover, in closing argument the prosecutor was entitled to argue the inference from the evidence that appellant was a drug dealer and, thus, possessed the intent to distribute the drugs found in his possession. Therefore, the trial court did not abuse its discretion in denying appellant's motions for a mistrial.

## VII. Intent to Distribute

Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, appellant argues the evidence did not prove he had the intent to distribute. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1,

11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

Appellant argues that while the evidence proved that he possessed oxycodone, the Commonwealth did not prove that he intended to distribute it. However, the jury accepted the Commonwealth's evidence, and rejected appellant's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Moreover, the jury was permitted to consider appellant's prior felony convictions in assessing his credibility. See Code § 19.2-269.

> "Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Such evidence may include the quantity of drugs and cash possessed and whether appellant used drugs. Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, also are regularly recognized as factors indicating an intent to distribute.

Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (*en banc*) (quoting Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988)) (other citations omitted).

The text messages exchanged between McBride, posing as the informant, and appellant's phone suggested that a drug transaction was planned and that the meeting place for the exchange was at McDonald's. The police found on appellant a quantity of oxycodone pills, as well as cash. There was no evidence that the oxycodone pills found in appellant's possession in an unmarked prescription bottle were the pills prescribed for him by Bajwa. Indeed, earlier in the

day on May 26, 2012, appellant had traveled with Burgess to obtain a prescription for oxycodone from Bajwa and to fill that prescription. Considering all the facts and circumstances, the evidence proved beyond a reasonable doubt that appellant had the intent to distribute and that he was guilty of the charged offense.

## VIII. Conclusion

For the foregoing reasons, we find that the trial court did not err in finding appellant guilty of possession with intent to distribute or sell a Schedule I or II controlled substance in violation of Code § 18.2-248. Accordingly, the trial court is affirmed.

<u>Affirmed.</u>